UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

M&D Optical Franchise, LLC,

    Plaintiff-Counterdefendant,

vs.

20/20 Vision Center, LLC,

    Defendant-Counterclaimant.

Case No.: 9:18-cv-80023-RLR

**DEFENDANT-COUNTERCLAIMANT'S MOTION TO DISMISS
PLAINTIFF-COUNTERDEFENDANT'S FIRST AMENDED COMPLAINT (DE 25)**

    Defendant 20/20 Vision Center, LLC ("20/20 Vision" or "Defendant"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, respectfully requests that the Court enter an order dismissing with prejudice Plaintiff M&D Optical Franchise, LLC's ("M&D Optical" or "Plaintiff") First Amended Complaint (DE 25) (the "Amended Complaint").

**I.**    **INTRODUCTION**

    This is now M&D Optical's second attempt at alleging a tag-along suit for tortious interference arising out of an investigatory demand letter that 20/20 Vision Center sent in connection with a patent infringement and intellectual property action pending in the Southern District of New York. Continuing to rely upon legal conclusions, bare assertions, and formulaic recitations, Plaintiff's Amended Complaint should be dismissed with prejudice because: (1) Plaintiff fails to allege bad faith and its claims are therefore preempted as a matter of federal patent law; (2) Plaintiff fails to plausibly allege the essential elements of tortious interference under Florida law; and (3) in the absence of any malice or impropriety, the statements in 20/20 Vision's investigatory demand letter are privileged and not actionable.

II.  **BACKGROUND**[1]

    A.  **20/20 Vision and the Prior Pending IP Litigation**

20/20 Vision is a leading developer and provider of telemedicine systems and technology for the eye health industry, including teleophthalmology solutions that allow vision and eye examinations to be performed from virtually any location. (Ex. 1, ¶¶ 20, 23). 20/20 Vision's solutions utilize ophthalmic equipment, refraction software, and telecommunications technology in order to enable remotely-located eye care professionals to communicate and interact in real-time with customers at an exam site, guide them through vision and eye examinations using the ophthalmic equipment, review and evaluate the examination data and results, and generate optical prescriptions and exam reports. (*Id.*, ¶ 23).

As a result of its innovations in teleophthalmology, 20/20 Vision was granted, *inter alia*, U.S. Patent No. 9,230,062 (the "'062 Patent"), entitled "Systems and Methods for Enabling Customers to Obtain Vision and Eye Health Examinations," which was filed with the U.S. Patent and Trademark Office on November 6, 2013 and issued on January 5, 2016. *See generally* (DE 1-5 at 21-60); (Ex. 1, ¶ 26). In general, the '062 Patent discloses and claims new and improved telehealth systems, methods, and computer software for enabling remotely-located eye health practitioners to connect with customers at exam sites and perform vision and eye examinations via a computing network. (Ex. 1, ¶ 28). As the assignee and owner of all rights to

---

[1] While Plaintiff's Amended Complaint continues to be predicated upon 20/20 Vision's investigatory demand letter, *see* (DE 25-1 at 2-3), Plaintiff again failed to include a copy of the attachment referenced therein – namely, the "Complaint against VPH in the United States District Court for the Southern District of New York (a copy of which is attached hereto)." (*Id.* at 2). To the extent deemed central to Plaintiff's claims, *see, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), a CM/ECF-stamped copy of 20/20 Vision's Complaint in the Southern District of New York (without the exhibits thereto) is attached as **Exhibit 1**.

enforce the '062 Patent, 20/20 Vision has full rights to publish and sue and recover damages from all past, present, and future infringement of the '062 Patent. *See*, *e.g.*, (*Id.*, ¶ 27).

On November 6, 2017, 20/20 Vision brought suit for, *inter alia*, infringement of the '062 Patent in the U.S. District Court for the Southern District of New York against Vision Precision Holdings, LLC and other defendants associated with the "My Eyelab" franchise program, in the action styled as *20/20 Vision Center, LLC v. Vision Precision Holdings, LLC et al.*, No. 1:17-cv-8576 (the "Pending IP Litigation"). *See generally* (Ex. 1). With respect to Vision Precision Holdings, LLC ("VPH"), 20/20 Vision alleged that VPH shared the same address for its principal place of business as the other corporate defendants, and that those entities were "owned or controlled (directly or indirectly) by, and/or under common ownership or control, with VPH." (*Id.*, ¶¶ 3-4, 6-7). Unbeknownst to 20/20 Vision at the time it brought suit, M&D Optical was also affiliated with VPH and the "My Eyelab" franchise program.[2]

### B. 20/20 Vision's Investigatory Demand Letter

In connection with the Pending IP Litigation, on November 15, 2017, 20/20 Vision's counsel sent a letter to Dr. Haeun Kim, a practitioner who apparently provided services to customers of VPH. (DE 25-1 at 2-3). The letter began by stating:

> We write to inform you about a pending dispute between 20/20 and Vision Precision Holdings, LLC, as well as certain other related entities and individuals, including Stanton Optical and My Eyelab (collectively, "VPH"). It has come to our attention that VPH may be violating 20/20's patents and other intellectual property rights.

(*Id.* at 2). The letter also attached a copy of 20/20 Vision's Complaint in the Pending IP Litigation and noted "[w]e are continuing our investigation into this matter to better

---

[2] As 20/20 Vision later learned and noted in its Notice of Removal, M&D Optical is directly affiliated, owned, controlled, and/or under common ownership with VPH, which is the exclusive provider of various goods and services to M&D Optical's franchisees. (DE 1 at 2, ¶¶ 4-6).

understand which companies and third parties are involved in building, offering, selling, operating, and/or providing VPH's telehealth-based systems and services and evaluating whether any such parties may also be liable to 20/20." (*Id*.). It then requested a response from the practitioner, "[i]ndicating the nature of your relationship with VPH and any of its related entities, any services you are offering or providing to VPH's customers or any other individuals that involve any telehealth-based systems or software," as well as "an explanation of any other roles you may have in connection with the design, manufacturing, sale, marketing, distribution, and/or performance of VPH's products and services." (*Id.*).

### C.  M&D Optical's Tag-Along Suit

On November 20, 2017, just five (5) days after 20/20 Vision sent its investigatory demand letter, M&D Optical filed a two-count complaint against 20/20 Vision in the Fifteenth Judicial Circuit Court, in and for Palm Beach County, Florida, seeking monetary damages (Count I) and injunctive relief (Count II) for tortious interference with an advantageous business relationship based on 20/20 Vision's letter. *See generally* (DE 1-2).  20/20 Vision removed the complaint and then moved to dismiss for failure to state a claim. *See* (DE 1 and 6).  M&D Optical failed to respond to the motion to dismiss, *see* (DE 18), and subsequently sought leave to file an amended complaint, *see* (DE 23).  As in its initial complaint, M&D Optical's Amended Complaint once again purports to seek monetary damages (Count I) and injunctive relief (Count II) for tortious interference with an advantageous business relationship based on 20/20 Vision's investigatory demand letter. *See* (DE 25).[3]

According to the Amended Complaint, M&D Optical is in the business of selling franchises that allow its franchisees to operate eye-care and eye-glass retail stores under the trade

---

[3] A redline comparing M&D Optical's Amended Complaint (DE 25) to its initial Complaint (DE 1-2), without the captions and signature blocks thereto, is attached as **Exhibit 2**.

name "My Eyelab." (*Id*., ¶ 9). As part of its franchise business, M&D Optical alleges that it "maintains business relationships with the franchisees of its 'My Eyelab' franchises, and in certain circumstances . . . the optometrists that work at certain of the franchisees' locations." (*Id*., ¶ 10). In regard to VPH and its role in the "My Eyelab" franchise program, the Amended Complaint vaguely notes that M&D Optical provides certain services to its franchisees, "some of which are provided through a non-party to this lawsuit, Vision Precision Holdings, LLC ('VPH')" and that, at least in part, M&D Optical's franchise businesses are "serviced" by VPH, which together with M&D Optical and "other related entities all work[] together in the provision of various services to M&D Optical's franchisees." (*Id*., ¶¶ 11, 14 and 40).

After noting M&D Optical and VPH's respective roles in the "My Eyelab" franchise program, the Amended Complaint specifically references 20/20 Vision's Pending IP Litigation. (*Id*., ¶ 16) ("On November 6. [sic] 2017, 20/20 filed a lawsuit against VPH and other non-parties to the instant lawsuit, styled *20/20 Vision Center LLC v. Vision Precision Holdings, LLC, et al.,* case no. 1:17-cv-08576. . . ."). It then alleges that, "[i]n an attempt to strong-arm VPH" into conceding to its demands in the Pending IP Litigation, 20/20 Vision "intentionally and surreptitiously sent letters to M&D OPTICAL's franchisees and optometrists . . . wherein it accused VPH of 'violating 20/20's patents and other intellectual property rights.'" (*Id*., ¶ 18) (quoting from Exhibit A, 20/20 Vision's investigatory demand letter to Dr. Kim, DE 25-1 at 2).

Despite acknowledging that 20/20 Vision sent the letters to "essentially assert[] . . . patent rights," (*Id*., ¶ 23), the Amended Complaint does not provide any factual allegations regarding the validity or potential bad faith assertion of 20/20 Vision's patent rights. It simply concludes that when 20/20 Vision sent its letters, 20/20 Vision did so in "bad faith inasmuch as 20/20 knew or should have known" that its patents "were invalid, and/or knowing (or did so when it should

have known) that 20/20's infringement claims were baseless, i.e., that 20/20's asserted patent rights were not being infringed upon. . . ." (*Id*., ¶ 24).

Separate and apart from the question of any potential bad faith in regard to 20/20 Vision's patent rights, the Amended Complaint alleges that 20/20 Vision's "goal" in sending the letters was to gain an unfair advantage in the Pending IP Litigation, cause economic harm to M&D Optical and various related entities, and somehow transform M&D Optical's franchisees into a "'bargaining chip' as part of a broader strategy to coerce M&D OPTICAL (and various related entities) into purchasing 20/20 Vision itself." (*Id*., ¶ 19). It then further speculates that 20/20 Vision's letters were "nothing more than a malicious attempt to force M&D OPTICAL to the 'negotiating table' making [sic] it more expensive to fight 20/20 than offer to purchase 20/20 itself" and a "transparent attempt to bolster its own 'valuation' in a hoped-for buyout offer." (*Id*., ¶¶ 26-27).[4]

Except for 20/20 Vision's letters, which M&D Optical characterizes as "veiled threat[s] of legal action against the recipients through accusations of possible ties to VPH's alleged wrongdoing," (*Id*., ¶ 21), and an "intimidation tactic," (*Id*., ¶ 22), the Amended Complaint does not assert any other basis for its claims of tortious interference.[5]

---

[4] While not material to the Court's resolution of the instant motion, 20/20 Vision takes grave exception to the contentions in the Amended Complaint that 20/20 Vision has or ever had any desire whatsoever to be purchased or sold. 20/20 Vision is not for sale (and certainly not to M&D Optical, VPH, or any of their affiliates). Any suggestion to the contrary is without basis in fact, devoid of evidentiary support, and utterly false. But for the well-founded limitations generally placed on Rule 12(f), 20/20 Vision would not have hesitated to accompany this filing with a verified motion to strike. To the extent necessary, 20/20 Vision reserves the right to seek further relief, if and when appropriate, by other motion.

[5] As for the letters themselves (plural), Plaintiff's Amended Complaint once again only attaches one letter – the November 15, 2017 letter to Dr. Kim. (Ex. A, DE 25-1 at 2-3). Neither Dr. Kim nor his relationship or involvement, if any, with M&D Optical, VPH, or their affiliates are mentioned in the Amended Complaint.

With respect to any harm or damages, the Amended Complaint generally asserts that "[m]any recipients of 20/20's letter contacted M&D OPTICAL with concerns about their ongoing relationship," (*Id*., ¶ 29), and that the letter significantly impaired M&D Optical's relationship with its franchisees, (*Id*., ¶ 28), as well as threatened possible referrals to other potential franchisees, (*Id*., ¶ 33). As a result, M&D Optical was "forced – at its own cost and expense – to address the franchisees' questions and concerns in an attempt to mitigate its damages and otherwise salvage its business relationships." (*Id*., ¶ 30). The Amended Complaint, however, does not allege that any franchisee ever severed its ties, only that one franchisee "failed to timely execute a planned franchise agreement in January 2018,"[6] expressed concern about signing future "planned" agreements, and "indicated an intent to change its business model to employ an in-house optometrist instead of M&D OPTICAL's telemedicine system," which would "significantly impair[]" M&D Optical's income stream from this franchisee. (*Id*., ¶¶ 31, 32).

### III.   STANDARD OF REVIEW

Groundless claims should be exposed "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotations omitted). Discovery in federal cases can be expensive, and courts must be conscious of this reality so as to avoid situations in which parties use the threat of such expense to push settlement of "anemic cases." *Id.* at 559. Early disposition is therefore appropriate when a cause of action is simply not plausible. *Id.* at 570.

---

[6] To the extent the Amended Complaint sets out a transaction, occurrence, or event that happened after Plaintiff's November 20, 2017 Complaint, Plaintiff should have given notice and sought to supplement. FED. R. CIV. P. 12(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

To be plausible, a claim must contain allegations that give fair notice of what the claim is and the grounds that support it, including "factual allegations adequate to raise a right to relief above a speculative level." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2008) (citing *Twombly*); *see also, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The obligation to provide the grounds of an entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While factual allegations are to be accepted as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Without resorting to such illegitimate means, the factual allegations in a pleading "must possess enough heft to set forth a plausible entitlement to relief," *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1282 (quotation omitted), and "nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quotation omitted).[7]

Claims that cannot be saved by a new round of artful or creative pleading should be dismissed without leave to amend. *See, e.g.*, *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (explaining that "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) (if a more carefully drafted complaint could not state a claim, dismissal with prejudice is proper).

---

[7] Dismissal under Rule 12(b)(6) is also proper where a claim suffers from a dispositive legal flaw, or where the facts alleged simply cannot support an element of the claim. *See, e.g.*, *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593 (11th Cir. 1992); *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1340, 1342 (S.D. Fla. 1998) ("Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law.").

## IV.   DISCUSSION

### A.   Plaintiff's Amended Complaint Fails to Allege Bad Faith and Must Be Dismissed as a Matter of Federal Patent Preemption

Inasmuch as Plaintiff's Amended Complaint continues to be devoid of any factual allegations – let alone the sort of *Twombly* heft – required to demonstrate bad faith, its claims are preempted by federal patent law and must be dismissed. A patent holder's publication of its patent – including statements or demand letters sent to third parties asserting actual or potential infringement – cannot form the basis of a state law claim for tortious interference unless the plaintiff first alleges, and can ultimately prove, that the patent holder acted in bad faith. *See, e.g., Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("[b]ad faith is a prerequisite to Excez's state-law tortious inference claim; without it, the claim is preempted by patent law.").[8] This is true "even if bad faith is not otherwise an element of the tort claim." *Id.* In the absence of any allegation of bad faith, state tort claims based on cease-and-desist letters, press releases and other communications warning of litigation are preempted by federal patent law. *See, e.g., ClearPlay, Inc. v. Nissim Corp*, 555 F. Supp. 2d 1318, 1328, 1331 (S.D. Fla. 2008) (dismissing Florida common law claims for tortious interference with a contractual relationship and a potential advantageous business relationship due to failure to plead bad faith).[9]

---

[8] The law of the Federal Circuit applies to the question of whether federal patent law preempts state tort claims. *See, e.g., Telefonaktiebolaget LM Ericsson & Ericsson, Inc. v. Wi-LAN USA, Inc.*, No. 14-cv-21854, 2015 WL 11233112, at *5-6 (S.D. Fla. Aug. 14, 2015) (applying law of Federal Circuit and finding preemption of Florida common law claim for tortious interference with a business relationship).

[9] *ClearPlay, Inc. v. Nissim Corp.* has a "tortured legal history," 433 F. App'x 782, 783 (11th Cir. 2011) (unpublished), involving multiple published and unpublished decisions by the District Court, Eleventh Circuit and Federal Circuit. However, this Court's April 2, 2008 decision at 555 F. Supp. 2d 1318, which dismissed the plaintiff's complaint for failure to allege bad faith based on federal patent preemption, was never directly appealed.

Federal patent preemption is grounded on the principle that "a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374-75 (Fed. Cir. 2004) (quoting *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997)). Without the ability to notify potential infringers of their conduct, "[p]atents would be of little value." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913). Accordingly, a state law tort claim can only be sustained against a patent holder upon a showing that the patent holder acted in bad faith in the publication or enforcement of its patent. *See*, *e.g.*, *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) (citing *Zenith Elecs. Corp.*, 182 F.3d at 1355).

To plausibly allege bad faith, a plaintiff must satisfy separate objective and subjective elements, both of which must be met. *See*, *e.g.*, *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998)). With respect to the objective element, the plaintiff must show that the patent holder's communications were objectively baseless, *id*. – in other words, that no reasonable litigant would expect to succeed on the merits because it knew or should have known that its patent was invalid, unenforceable or not infringed, yet represented to the marketplace that a competitor was infringing, *id*.; *Zenith*, 182 F.3d at 1354. With respect to the subjective element, the plaintiff must allege that the patent holder, acting on the basis of information available to it at the time, acted in subjective bad faith when enforcing or attempting to enforce its patent. *800 Adept, Inc.*, 539 F.3d at 1370; *Dominant Semiconductors Sdn. Bhd.*, 524 F.3d at 1264. For example, while an allegation that a patent holder has accused its own

licensee of infringement might give rise to an inference of objective bad faith, to establish subjective bad faith, the accused licensee would then need to plausibly allege that the patent holder itself knew that the licensing agreement authorized the licensee's conduct but decided to accuse it of infringement anyway. *See Wi-Lan USA, Inc.*, 2015 WL 11233112, at *6 (granting summary judgment based on patent preemption in analogous scenario). If the plaintiff fails to satisfy the objective element, it is unnecessary for the Court to consider the subjective element. *Id*. Finally, as in any other pleading, a complaint must include sufficient allegations of fact to establish both elements of bad faith, not merely legal conclusions or labels. *Clearplay*, 555 F. Supp. 2d at 1331 (dismissing complaint where plaintiff failed to provide any "*factual allegations to suggest*" that defendant's patent assertions were made in bad faith) (emphasis added); *see also*, *e.g.*, *HVLPO2, LLC v. Oxygen Frog, LLC*, No. 4:16-cv-336 (N.D. Fla. June 16, 2017) (same).

On its face, M&D Optical's Amended Complaint fails to allege any facts that would plausibly demonstrate 20/20 Vision's objective bad faith in asserting its patent rights – much less any allegation that 20/20 Vision subjectively acted in bad faith in sending its supposedly "veiled threat" of legal action through an investigatory demand letter. As a threshold matter, the Amended Complaint fails to allege that any of the information in 20/20 Vision's letter was objectively inaccurate. *See Mikohn Gaming Corp.*, 165 F.3d 891 ("[B]ad faith is not supported when the information is objectively accurate. In general, a threshold showing of incorrectness or falsity, or disregard for either, is required to find bad faith in the communication of information about the existence or pendency of patent rights."). Merely reciting that 20/20 Vision generally "knew or should have known that" its patents were "invalid" and/or that its "infringement claims were baseless," (DE 25, ¶ 24), will not do. *Twombly*, 550 U.S. at 555.

To be sure, the Amended Complaint also speculates that 20/20 Vision sent its investigatory demand letter to "(i) gain an unfair advantage in the [Pending IP Litigation]; (ii) cause direct economic harm to M&D OPTICAL (and various related entities); and (iii) transform M&D OPTICAL's franchisees into a 'bargaining chip' as part of a broader strategy to coerce M&D OPTICAL (and various related entities) into purchasing 20/20 [Vision] itself." (DE 25, ¶ 19). But none of those assertions, to the extent they can be considered factual, have anything to do with 20/20 Vision's patent rights and whether it was objectively reasonably for 20/20 Vision to assert those rights in its investigatory demand letter. In any event, patent holders are entitled to assert their rights to obtain an economic advantage over potential infringers. *See, e.g., Globetrotter Software, Inc.*, 362 F.3d at 1374-75 ("a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license . . . , or decide to run the risk of liability" (quoting *Va. Panel Corp.*, 133 F.3d at 869)). Indeed, like M&D Optical, the plaintiff in *Mikohn Gaming* brought a claim for tortious interference and asserted the patent holder's "communications were written in order to intimidate prospective customers, and that [the patent holder's] purpose was to obtain an unfair business advantage by placing [the accused infringer's] product under a cloud of potential litigation." 165 F.3d at 897. The Court concluded that without a threshold showing of incorrectness or falsity, "a competitive commercial purpose is not of itself improper," and thus bad faith may not be supported with such an allegation, leaving a patent holder who has otherwise acted in good faith fully permitted to press its rights, including by informing potential infringers of the existence of its patent and threatening alleged infringers with suit. *Id*.

In sum, M&D Optical has once again fallen woefully short of alleging any facts that would support a plausible inference of objective bad faith on the part of 20/20 Vision, much less any subjective bad faith. The claims in its Amended Complaint for tortious inference are accordingly preempted by federal patent law and must be dismissed.

**B.     Plaintiff's Amended Complaint Fails to Plausibly Allege the Essential Elements of a Claim for Tortious Interference under Florida Law**

Even assuming that Plaintiff had plausibly pled bad faith and could withstand federal patent preemption, as a matter of Florida law, Plaintiff has failed to plausibly allege all the essential elements of a claim for tortious interference. In Florida, the elements of a claim for tortious interference with an advantageous business relationship are:

> (1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *see also*, *e.g.*, *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015). To establish the third element – intentional and unjustified interference – a plaintiff not only must show that the defendant manifested a specific intent to interfere with the plaintiff's business relationship, *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838 (Fla. 2d DCA 2009), but that the defendant's interference caused a breach of the relationship, *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002), as well as the absence of any justification or privilege, *Fernandez v. Haber & Ganguzza, LLP*, 30 So. 3d 644, 646 (Fla. 3d DCA 2010).

Here, among other deficiencies, Plaintiff has failed to plausibly allege: (1) that 20/20 Vision's alleged interference caused a breach in M&D Optical's business relationships; (2)

the absence of any justification or privilege; or (3) that M&D Optical suffered damages as a result of any breach.

### 1. Plaintiff's Failure to Allege Causation

Plaintiff fails to allege that 20/20 Vision actually caused a breach in Plaintiff's business relationships. To establish causation, Plaintiff must allege that 20/20 Vision's conduct "caused or induced the breach that resulted in the plaintiff's damages." *Chicago Title Ins. Co.*, 832 So. 2d at 814; *see also*, *e.g.*, *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 14-cv-22770, 2015 WL 12085848, at *11 (S.D. Fla. Mar. 20, 2015).[10] In fact, the "gravamen of a tortious interference claim is that the defendant induced a third party to breach the contract or the relationship." *Sekula v. Residential Credit Sols., Inc.*, No. 15-cv-2104, 2016 WL 4272203, *3 (M.D. Fla. Aug. 15, 2016). While "[a] business relationship need not be evidenced by a contract, . . . it generally requires 'an understanding between the parties [that] would have been completed had the defendant not interfered.'" *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (quoting *Ethan Allen, Inc.*, 647 So. 2d at 814).

Here, Plaintiff fails to identify an actual breach of any relationship due to 20/20 Vision's putative interference. At most, M&D Optical alleges a speculative risk that one of its franchisees *might* end a franchisor-franchisee relationship at some point in the future, *see* (DE 25, ¶ 32) (stating "this franchisee has indicated an *intent* to change its business model") (emphasis added), and a "concern about signing future planned franchise agreements, (*Id*., ¶ 31). Stopping short of an actual breach of any relationship, at most, M&D Optical's allegations suggest that its

---

[10] Some courts address causation within the element of damages. *See*, *e.g.*, *PC Cellular, Inc. v. Sprint Sols., Inc.*, No. 14-cv-237, 2014 WL 5772134, at *3 (N.D. Fla. Nov. 5, 2014) (granting motion to dismiss where plaintiff "[w]holly failed to plead any factual content alleging that he was damaged by th[e] alleged interference" and allegations at most showed that defendant attempted to interfere but was ultimately unsuccessful).

relationship with this franchisee has actually continued after 20/20 Vision sent its allegedly interfering letter. *See, e.g.,* (*Id.*, ¶ 31) (asserting franchisee executed a "planned franchise agreement" though it failed to do so "timely"). Because Plaintiff still cannot identify any actual breach of a relationship (even with the passage of time since the filing of its initial complaint), it has failed as a matter of law to state a claim for tortious interference.

> 2. *Plaintiff's Failure to Allege Absence of Justification or Privilege*

Plaintiff's Amended Complaint fails to plausibly allege the absence of any justification or privilege or that 20/20 Vision unjustifiably interfered with Plaintiff's business relationships. At most, Plaintiff merely states a legal conclusion that "20/20 was unjustified (and acted outside any form of privilege)." (DE 25, ¶ 25). As discussed above and further below, 20/20 Vision's actions were not only justified, but privileged as a matter of law. Indeed, "[c]ourts routinely reject tortious-interference claims based on good-faith efforts to enforce intellectual property rights." *Miracle 7, Inc. v. Halo Couture, LLC*, No. 13-cv-61643, 2014 WL 11696708, at *4 (S.D. Fla. Jan. 17, 2014) (J. Rosenbaum) (granting defendant's motion to dismiss, in part, for lack of any suggestion that "[a]n ulterior motive of direct, tortious interference exists behind [defendant's] ostensibly good-faith efforts to protect its mark.").

> 3. *Failure to Allege Damages*

Finally, Plaintiff has failed to plausibly allege that it suffered any damages. Damages are an integral element of a claim for tortious interference; as a matter of law, nominal damages are not available. *See, e.g., Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008); *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091-93 (11th Cir. 1994) (remanding for district court's imposition of sanctions against plaintiff

who was aware that letters upon which tortious interference claim were predicated had not caused any harm).

Plaintiff does not allege that its franchisees or any optometrists ended a business relationship. At most, M&D Optical perhaps alleges a near-miss when one franchisee failed to timely execute a "planned" franchise agreement. (DE 25, ¶ 31). Though this franchisee also "indicated an intent to change its business model," (*Id.*, ¶ 32), and a "concern about signing future planned franchise agreements," (*Id.*, ¶ 31), the future risk of possibly losing a business relationship with a franchisee who has already executed a franchise agreement but might not sign another in the future because it has "indicated concern" is likely too speculative to confer Article III standing, let alone satisfy the pleading requirements to allege a claim for tortious interference. *Cf. In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08-md-1916, 2017 WL 5447714, *3 (S.D. Fla. Apr. 26, 2017) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) and concluding that Article III standing requires a threatened injury be "certainly impending" because allegations of possibly future injury will not suffice), *aff'd sub nom. DOES 1-98 v. Boies, Schiller & Flexner, LLP*, 709 F. App'x 684 (11th Cir. 2017) (unpublished). If anything, as noted, the relationship between Plaintiff and its franchisees appears to have continued despite the passage of additional time, thereby precluding any plausible inference of actual damages or harm caused by 20/20 Vision's letter.

\* \* \*

Having twice now failed to plausibly allege all the essential elements of a claim for tortious interference under Florida law – including, in particular, causation, the absence of any justification or privilege, and damages – Plaintiff's Amended Complaint should be dismissed with prejudice.

### C. In the Absence of Any Malice or Impropriety, the Statements in 20/20 Vision's Investigatory Demand Letter are Privileged and Not Actionable

The entire gravamen of Plaintiff's Amended Complaint continues to rest on 20/20 Vision's investigatory demand letter and the statements therein regarding the Pending IP Litigation and 20/20 Vision's interests in its patents and its other intellectual property rights. (DE 25, ¶¶ 15-16 and Ex. A at 8-9). In the absence of any alleged malice or impropriety, as a matter of Florida law, such statements are privileged and cannot serve as the basis of a claim for tortious interference.

In Florida, out-of-court statements made to potential non-party witnesses in connection with or related to a pending lawsuit are, at a minimum, qualifiedly privilege. *See*, *e.g.*, *DelMonico v. Traynor*, 116 So. 3d 1205, 1208 (Fla. 2013); *cf. Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007);[11] *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994); *see also Fernandez*, 30 So. 3d at 646 ("Any proceeding based on statements made in connection with a judicial proceeding are not actionable."). Consequently, unless a plaintiff pleads and can prove that the statements at issue were made with express malice, they cannot serve as the basis of a claim for tortious interference and must be dismissed. *See*, *e.g.*, *XTec, Inc. v. Hembree Consulting Servs., Inc.*, No. 14-cv-21029, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014) (citing *DelMonico* and applying qualified privilege to dismiss claim for tortious interference). More generally, a party also has a privilege to safeguard its economic interests and, so long as improper means are not employed, actions taken to promote those interests are usually not an actionable basis for a claim of tortious interference. *See*, *e.g.*, *Duty Free Americas, Inc.*, 797

---

[11] While *DelMonico* addressed the privilege in the defamation context, 116 So. 3d at 1208, *Echevvaria* held that the "litigation privilege applies in all causes of action," 950 So. 2d at 384.

F.3d at 1280-81 (11th Cir. 2015) (collecting Florida cases and affirming dismissal of tortious inference claim that, *inter alia*, failed to plausibly allege any impropriety in defendant's actions).

From the face of Plaintiff's Amended Complaint, it remains clear that 20/20 Vision sent its investigatory demand letter in connection with the Pending IP Litigation and to protect its own economic interests in patents and other intellectual property rights. Indeed, M&D Optical now concedes as much by alleging that the first of 20/20 Vision's supposed "goal[s]" in sending the letter was to gain an advantage in the Pending IP Litigation. (DE 25, ¶ 19). Apart from M&D Optical's conclusory assertions that 20/20 Vision was "unjustified," "acted outside any form of privilege" and "intentionally and maliciously interfered," (*Id.*, ¶¶ 25 and 27) – none of which the Court should accept as true, *Davila*, 326 F.3d at 1185 (conclusory allegations masquerading as facts will not prevent dismissal) – there are no facts from which one could plausibly infer that the statements in 20/20 Vision's letter were made in connection with anything other than pending litigation. Or that they were made out of any motivation other than to protect and promote 20/20 Vision's economic interests in its intellectual property, much less that they were made out of malice or with impropriety. Inasmuch as Plaintiff has not, and cannot, allege any facts showing that the statements in 20/20 Vision's letter were made out of malice or with impropriety, its claims for tortious interference fail as a matter of law and should be dismissed with prejudice.

**V.     CONCLUSION**

For all the foregoing reasons, Defendant-Counterclaimant 20/20 Vision Center, LLC respectfully requests that the Court enter an order dismissing Plaintiff-Counterdefendant M&D Optical Franchise, LLC's First Amended Complaint with prejudice.

Dated:  February 22, 2018

Respectfully submitted,

s/ Taylor F. Ford
Taylor F. Ford
Florida Bar No.: 0041008
Robyn M. Kramer
Florida Bar No.: 0118300
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email:  tford@kbzwlaw.com
Email:  rkramer@kbzwlaw.com

Joseph J. Richetti[*]
Alexander D. Walden[*]
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Telephone:  (212) 541-2000
Facsimile: (212) 541-4630
Email:  joe.richetti@bryancave.com
Email:  alexander.walden@bryancave.com

*(Motions to appear pro hac vice forthcoming)

*Counsel for Defendant-Counterclaimant*
*20/20 Vision Center, LLC*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on February 22, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve a notice of electronic filing on all counsel or parties of record on the Service List below.

s/ Taylor F. Ford
Taylor F. Ford
Florida Bar No.: 0041008

**SERVICE LIST**

Charles W. Grimes
Luca Hickman
G<small>RIMES</small>, LLC
3501 Bonita Bay Blvd.
Bonita Springs, FL 34134
Telephone: (239) 330-9000
Facsimile: (239) 301-2215
Email:  grimes@gandb.com
Email:  hickman@gandb.com

*Counsel for Plaintiff-Counterdefendant*
*M&D Optical Franchise, LLC*

Case 9:18-cv-80023-RLR  Document 30  Entered on FLSD Docket 02/22/2018  Page 20 of 20